UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Michael A. Long,                    :   Case No. 1:07-cv-268
                                    :
        Plaintiff,                  :
                                    :
vs.                                 :
                                    :
UAW Local No. 674 and Kelly         :
McNutt,                             :
                                    :
        Defendants.                 :

**ORDER**

Before the Court is Defendants' motion for summary judgment (Doc. 11). Plaintiff opposes the motion (Doc. 14), and Defendants have replied. (Doc. 17) Defendants contend they are entitled to judgment on all of Plaintiff's claims, which arise out of Plaintiff's loss of his position as shop chairman of Local 674 following a recall election.

For the reasons discussed below, the Court finds the Defendants' motion should be granted.

**FACTUAL BACKGROUND**

The facts giving rise to this dispute, although largely undisputed, are viewed in a light most favorable to Plaintiff. Michael Long was a veteran General Motors employee and member of the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW). Long worked at GM's Delco-Moraine

-1-

plant for 33 years, as a member of UAW Local 696. Long transferred to a GM plant in Monroe, Ohio in the 1990's, and became a member of UAW Local 674. In 2001, Long was elected to a three-year term as Vice President of Local 674. In July 2004, Long was elected Bargaining Chair of the Local. Defendant Kelly McNutt was elected President of the Local in the same election.

On April 3, 2005, the Local membership unsuccessfully attempted to recall Long from his position as Bargaining Chair. Sometime in October 2005, another recall petition was submitted which had been signed by the required number of the Local's members. The petition alleged that Long had violated provisions of the UAW Constitution, that he was carelessly settling grievances, and that he failed to advance and implement the official policy of Local 674. (Doc. 1, Complaint §8) Long was notified of these charges, and McNutt scheduled a recall election for November 13, 2005. Long was permitted to speak to the members for only fifteen minutes, to respond to the petition's charges. A majority of the Local members in attendance (73%) then voted in favor of Long's recall.

Long exercised his internal appeal rights by appealing to the Local membership. When that was unsuccessful, he appealed to the UAW's International Executive Board, as provided by the UAW Constitution. If an IEB appeal is unsuccessful, the UAW Constitution permits further review by the Convention Appeals

-2-

Committee, and the Public Review Board.  Long's appeal to the IEB argued that the recall petition and election procedures violated several UAW constitutional provisions and Local 674's by-laws.

While Long's appeal before the IEB was pending, Long elected to retire from GM under a voluntary early retirement option that GM offered to veteran employees.  In April 2006, he signed the agreement which entitled him to full retirement benefits and a lump sum payment, effective on a date to be set by GM but no later than January 1, 2007.  GM eventually made Long's retirement effective October 31, 2006.

The IEB held a hearing on Long's appeal on August 30, 2006. On October 30, 2006, the IEB found that Long's appeal was meritorious on one ground, that the recall petition did not comply with Article 45, Section 3 of the UAW's International Constitution.  That provision states that a valid recall petition must set forth "specific complaints" of an officer's failure to perform the duties of his office.  The IEB found the petition's charges against Long were not specific enough to permit Long to adequately defend himself, and therefore Long did not receive adequate due process.  The IEB also concluded (after a five-hour hearing) there was no evidence of malicious intent, discriminatory practices and/or unethical treatment.  The Board concluded that the recall election should not have been conducted

-3-

because the petition was invalid.  (See Doc. 11, Exhibit 3 to
Sarkesian Affidavit, IEB Order at pp. 10-13.)

The Board noted that the normal result of Long's successful
appeal would be an order directing the Local to reinstate Long to
his position, and to take no further action regarding the recall.
However, the IEB concluded that ordering Long's reinstatement
would be moot because Long had irrevocably elected to retire from
GM.[1]  The Board concluded that "it would be imprudent to
reinstate [Long] for only a couple days and then have the Local
Union go through the expense of another election. . . .  Under
these unusual circumstances, although we rule in favor of the
Appellant, we do not order such reinstatement for the
aforementioned reasons."  (Id. at p. 16)  The Board did not award
Long any damages as an alternate form of relief.

Long did not pursue additional internal Union appeals, but
filed his three-count complaint in this case on April 3, 2007.
His first claim, brought pursuant to 29 U.S.C. §411(a)(5),
alleges that Local 674 and McNutt maliciously disregarded his due
process rights that statute guarantees.  His second claim alleges
that McNutt tortiously interfered with his contractual rights
under the UAW International Union Constitution and Local 674's

---

[1] The UAW's adopted Interpretation of Article 45, Section 1
of the UAW's Constitution makes retired members ineligible for
elected positions carrying responsibility for union member
grievances.  See Doc. 11, Exh. 2 to Sarkesian Affidavit.  Long
does not dispute this interpretation.

by-laws.  His third claim alleges that Local 674 breached his

contract (again, the International Constitution and Local

bylaws).  He seeks compensatory and punitive damages, and

recovery of his attorney's fees.

**DISCUSSION**

1.  <u>Standard of Review</u>.

The standards for summary judgment are well established.

Summary judgment is proper "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party

opposing a properly supported summary judgment motion "'may not

rest upon the mere allegations or denials of his pleading, but

... must set forth specific facts showing that there is a genuine

issue for trial.'"  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 248 (1986) (quoting <u>First Nat'l Bank of Arizona v. Cities</u>

<u>Serv. Co.</u>, 391 U.S. 253 (1968)).  The Court is not duty bound to

search the entire record in an effort to establish a lack of

material facts.  <u>Guarino v. Brookfield Township Trs.</u>, 980 F.2d

399, 404 (6th Cir. 1992); <u>InterRoyal Corp. v. Sponseller</u>, 889

F.2d 108, 111 (6th Cir. 1989), <u>cert. den.</u>, <u>Superior Roll Forming</u>

<u>Co. v. InterRoyal Corp.</u>, 494 U.S. 1091 (1990).  Rather, the

burden is on the non-moving party to "present affirmative

-5-

evidence to defeat a properly supported motion for summary judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250.  "If the evidence is merely colorable, . . . , or is not significantly probative, . . . , the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).

Although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that

-6-

the "[s]ummary judgment procedure is properly regarded not as a
disfavored procedural shortcut, but rather as an integral part of
the Federal Rules as a whole, which are designed to 'secure the
just, speedy and inexpensive determination of every action.'"
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986) (citations
omitted).

2.    <u>Plaintiff's Claim Under 29 U.S.C. §411(a)(5)</u>.

        Title I of the Labor Management Reporting and Disclosure
Act, 29 U.S.C. §411, is entitled the "Bill of Rights" for union
members.  The statute guarantees certain fundamental protections
such as free speech and assembly rights.  Section 411(a)(5)
states:

>       No member of any labor organization may be
>       fired, suspended, expelled or otherwise
>       disciplined . . . unless such member has been
>       (A) served with written specific charges; (B)
>       given a reasonable time to prepare his
>       defense; (C) afforded a full and fair
>       hearing.

Plaintiff contends he may bring an action for damages against the
Defendants under this Section.

        In <u>Finnegan v. Leu</u>, 456 U.S. 431 (1982), the Supreme Court
held that a union's appointed business agent could not bring a
claim under Section 411(a)(5), after he was terminated by union
officials for supporting the losing candidate in a union
election.  The Court concluded that in passing the statute, "it
was rank and file union members - not union officers or

-7-

employees, as such - that Congress sought to protect." <u>Id</u>. at
437. The Court cited the Congressional Conference Report
discussing Section 411(a)(5), which noted that "the prohibition
on suspension without observing certain safeguards applies only
to suspension of membership in the union; it does not refer to
suspension of a member's status as an officer of the union." <u>Id</u>.
at 438.

In <u>Sheet Metal Workers Int'l Assn v. Lynn</u>, 488 U.S. 347
(1989), the Court found that 29 U.S.C. §411(a)(2), guaranteeing
free speech rights, protected elected union officials from
retaliatory discharge based upon their exercise of those rights.
In that case, Lynn was a local union's elected business agent who
was terminated by a trustee appointed by the International Union.
The trustee removed Lynn because he vocally opposed a dues
increase proposed by the trustee, and which the Local then
rejected. Five days after the dues increase vote, the trustee
removed Lynn from his position. Lynn brought a claim under the
"free speech" clause of Section 411(a)(2), and the Supreme Court
concluded he could proceed under the statute. The Court noted
that Lynn's removal was prompted by his exercise of his
**membership** rights, to speak out and vote against the dues
increase. Moreover, his removal denied the union membership the
services of the official they had elected, undermining the
principles animating Title I's protections of union members.

-8-

The question of whether an elected union official may bring an action under Section 411(a)(5) for due process violations in removal from elected office has not been directly addressed by the Sixth Circuit.  Other circuits have concluded that no action may be brought.  See, e.g., <u>Gilvin v. Fire</u>, 259 F.3d 749, 761 (D.C. Cir. 2001), noting that the removal of an elected officer by membership vote "represents the expression of democracy, not its subversion."  See also, <u>Sheridan v. Carpenters</u>, 306 F.2d 152 (3rd Cir. 1962); and <u>Sullivan v. Laborers</u>, 707 F.2d 347 (8th Cir. 1983).

Several district courts, including two within this circuit, have similarly concluded that Section 411(a)(5) does not provide a cause of action for elected union officers.  In <u>Argentine v. United Steel Workers Association</u>, 23 F.Supp.2d 808 (S.D. Ohio 1998) (Marbley, J.), plaintiffs were local union officers removed by their International Union when it imposed a trusteeship on the local.  Plaintiffs' claims regarding the imposition of the trusteeship survived for a jury trial.  But the district court concluded that the officers' "due process" claims for removal from office were not cognizable under Section 411(a)(5).

And in <u>Austin v. UAW</u>, 2004 U.S. Dist. LEXIS 19479 (E.D. Mich., June 4, 2004), the district court found that a local's elected bargaining committee chair, who was facing a recall petition by the membership, could not bring a claim under Section

411(a)(5) and thus was not entitled to an injunction against the election.

The same result was reached in Messina v. Local 1199 SEIU, 205 F.Supp.2d 111 (S.D.N.Y. 2002), where the district court concluded that a "close reading" of Finnegan and Lynn favors the conclusion that Section 411(a)(5) does not encompass an elected union delegate's due process claim, after she was removed from her position by local officials.  The district court held that "when the improper removal from union office is not preceded by a free expression of speech [as in Lynn], but simply fails to conform to the proper procedures, the democracy concerns articulated in Lynn are diminished because the message sent to members by the removal is not nearly as direct."  Messina, 205 F.Supp.2d at 126.  See also, Murray v. Carroll, 2007 U.S. Dist. LEXIS 42355 (D.Conn., June 12, 2007), granting judgment on the pleadings to defendant union on local officer's claim under Section 411(a)(5).

Plaintiff recognizes these authorities, but urges this Court not to follow them.  He argues that Austin v. UAW was wrongly decided, because there is no reasonable basis to distinguish between the "free speech" protection of Section 411(a)(2) recognized in Lynn as extending to elected officials, and the "due process" protection of Section 411(a)(5).  As Messina noted, however, the result in Lynn protected the free speech and voting

-10-

rights of **all** local members (including the elected official), whose will was thwarted by the trustee's dismissal of their elected official. Here, in contrast, Plaintiff does not allege and the record does not reveal, any free speech he engaged in as a member of Local 674 that led to the recall. Moreover, unlike <u>Messina</u>, Plaintiff was recalled **by** the members, by a 73% majority vote. He was not summarily dismissed by higher union officials. The Court finds the reasoning of these cases to be persuasive. Plaintiff's arguments do not establish a sound basis upon which this Court could conclude that Plaintiff may proceed under Section 411(a)(5). Defendants are entitled to judgment on Plaintiff's first cause of action.

3.   <u>Tortious Interference with Contract</u>.

Plaintiff's second claim alleges that Defendant McNutt tortiously interfered with his contract rights under the UAW International Constitution and Local 674's bylaws. Plaintiff alleges that McNutt intentionally violated the procedures regarding the proper recall and removal of an elected bargaining chair. Defendants contend this claim is pre-empted under Section 301 of the Labor Management Relations Act, 29 U.S.C. §185, which states that suits for violation of contracts "between" labor organizations may be brought in federal court. They cite <u>DeCoe v. General Motors Corp</u>., 32 F.3d 212 (6th Cir 1994), holding that state law claims are preempted by Section 301 when state law

rules would "substantially implicate the meaning" of a contract covered by LMRA.

Uniformity and predictability in interpreting labor contracts are the goals underlying LMRA preemption. State law claims that are truly independent of the terms of a labor contract are therefore not preempted. DeCoe sets out a two-step process to determine if pre-emption applies. The court must first ask if the state law claims require any interpretation of the contract. The court must then determine whether the right underlying the state law claim is created by the union contract, or by state law. If it emanates from both sources, and no contract interpretation is required, preemption will not apply.

> In order to make the first determination, the
> court is not bound by the 'well-pleaded
> complaint' rule, but rather, looks to the
> essence of the plaintiff's claim, in order to
> determine whether the plaintiff is attempting
> to disguise what is essentially a contract
> claim as a tort. . . . If the plaintiff can
> prove all of the elements of his claim
> without the necessity of contract
> interpretation, then his claim is independent
> of the labor agreement.

DeCoe v. General Motors, 32 F.3d at 216 (internal citations omitted).

Defendants argue that both of DeCoe's steps mandate preemption of Plaintiff's tort claim. They note that his claim is premised entirely on his allegation that McNutt interfered with his rights under the UAW Constitution and Local 674 bylaws

governing recalls.  This claim does not arise under state law, but solely under the express terms of the UAW constitution and local bylaws.  Plaintiff responds that his claim is not pre-empted because the UAW International Constitution and Local 674's by-laws are not contracts "between labor organizations" covered by Section 301.  He contends that McNutt interfered with his "personal" contract rights, entitling him to proceed.

The UAW International Constitution is a contract "between" the UAW International and its local unions, for purposes of Section 301 pre-emption.  See <u>Tisdale v. United Association Local 704</u>, 25 F.3d 1308, 1310 (6th Cir. 1994): "[W]e think it fair to say that intra-union matters are now preempted on the same terms as are labor-management matters[,]" citing <u>Wooddell v. International Brotherhood of Electrical Workers</u>, 502 U.S. 93, 99-100 (1991).  Plaintiff's tortious interference claim rests squarely on his allegation that McNutt intentionally violated the UAW Constitution's Article requiring "specific charges" in a recall petition (see Complaint ¶¶24 and 25), and by limiting Plaintiff's time to respond during the recall election to 15 minutes (¶26).  Under <u>DeCoe</u>'s analysis, there is no doubt this claim "substantially implicates" the terms of the constitution.  That document would have to be interpreted to determine Plaintiff's claim.  The trier of fact would have to determine what charges are "specific" enough to satisfy the UAW

constitution, and whether McNutt intentionally violated that constitutional provision in conducting the recall election as he did. Moreover, Plaintiff's claim undoubtedly arises under the UAW Constitution, and not any separate body of Ohio law. See, e.g., <u>Pearson v. UAW Int'l</u>, 199 Fed. Appx. 460 (6th Cir., September 29, 2006) (unpublished), finding former union official's breach of fiduciary duty claim against the union and individual union officials to be pre-empted by Section 301, because the Court would have to interpret the union constitution to determine if it created a fiduciary duty. Plaintiff's tortious interference claim based upon the UAW International Constitution is therefore pre-empted.

Plaintiff argues that his tortious interference claim is also based on McNutt's interference with Local 674's by-laws, which Plaintiff asserts is a contract between the Local and its members and is not covered by Section 301. Plaintiff relies on <u>Korzen v. Local Union 705</u>, 75 F.3d 285, 288 (7th Cir. 1996), where Judge Posner noted that a local union's constitution is a contract between the union and its members, "in the same way that a corporate charter is a contract between the corporation and its shareholders," and that a suit on a local union constitution is not within Section 301's scope. Plaintiff also argues (in a

-14-

variant on the venerable "goosey-gander" rule[2]) that courts have little difficulty permitting unions to sue their members in state court for violating union constitutions, and so Plaintiff should be able to sue McNutt for the same violation.

Defendants respond that Local 674's by-laws are expressly made subordinate to the UAW's International Constitution, which Local 674 adopted as its own constitution. (Doc. 14, Exhibit 1, Local 674 By-Laws, Article 2.) UAW local union by-laws must be expressly ratified by the IEB, per UAW Constitution Article 37, Section 3. Given these special circumstances, Defendants contend that any interpretation of the Local 674 By-laws concerning recall procedures will necessarily require interpreting the International Constitution's terms on that subject. Therefore, Plaintiff's claim under the local by-laws must also be pre-empted for that reason.

While Plaintiff's complaint does not identify any specific by-law he contends was violated, Article 12 of Local 674's by-laws, Section 2, states that a valid petition for recall must contain "specific complaints" against the officer. Plaintiff does not suggest, and the Court cannot discern, any substantive or meaningful difference between this requirement of the by-laws, and the phrase "specific complaints" used in Article 45, Section

---

[2] See, e.g., <u>United States v. Hussein</u>, 478 F.3d 318, 340 (6th Cir. 2007).

3 of the UAW's International Constitution.  That Article requires
a local to establish only two independent provisions governing
recalls: the number of members who must sign a petition, and the
quorum necessary to hold a recall meeting and election.  The UAW
Constitution controls the rest of the process, including the
"specific complaints" requirement, and a requirement that two-
thirds of the members present at the meeting must vote in favor
of recall.  Given this reality, the Court concludes that
Plaintiff's tortious interference claim under Local 674's by-laws
must also be pre-empted.  It is inevitable that Plaintiff's
arguments about the by-laws "specific complaints" language, or
his assertion that McNutt allocated him "only" 15 minutes to
respond to the complaints, will require interpretation and
application of the UAW Constitution.  Accepting Plaintiff's
argument, in view of these unique facts, would let his tort claim
proceed through the back door after Section 301 pre-emption
effectively bolted the front door.  Permitting him to proceed
would therefore contravene the very purposes of the pre-emption
doctrine applied to claims based on union constitutions.

Regarding Plaintiff's assertion that unions may sue members
for violating union constitutions, these cases typically involve
administrative or procedural membership requirements, such as
paying dues or fines levied by the union.  See, e.g., Int'l Assn.
of Heat & Frost Insulators v. Doerman, 2005 U.S. Dist. LEXIS 9012

-16-

(S.D. Ohio, April 18, 2005), holding that the federal court lacks jurisdiction over the Union's complaint against a member for refusing to pay a fine levied for violating the union constitutional ban on performing work for a company without a union agreement.  Cases such as these do not support Plaintiff's argument that he "should" be permitted to proceed on his state law claim, in view of the pre-emption doctrine that clearly applies to Plaintiff's tort claim.

The Court therefore concludes that Count II, Plaintiff's tortious interference with contract claim, is pre-empted.

4.  <u>Breach of Contract</u>.

Plaintiff's third claim alleges that Local 674 breached the International Constitution and its own by-laws in removing him as shop chair.  Defendants argue this claim fails on the merits.

The parties generally agree that there is a strong judicial preference to avoid undue interference with internal union affairs.  The courts will not "second guess" a union's interpretation of its own constitution if that interpretation is "fair and reasonable."  <u>Vestal v. Hoffa</u>, 451 F.2d 706, 709 (6th Cir. 1971).  The special circumstances under which the court may consider such a claim for breach of a union constitution must involve more than plaintiff's disagreement with the union's interpretation.  The special situations are typically described as involving bad faith or a patently unreasonable interpretation

-17-

of a union document.  See, e.g., <u>Millwrights Local 1079 v.</u>
<u>Carpenters</u>, 878 F.2d 960, 962 (6th Cir. 1989) and cases cited
therein.

Despite these principles, Plaintiff argues that judicial
interference in this case, in the form of contract damages, is
justified because the Local's interpretation of its constitution
was not reasonable and its actions were unfair.  He argues that
his decision to retire from GM was due to his "frustration and
humiliation over having been removed as shop chairman." (Doc. 14
at p. 15)  Although he does not deny that he suffered no loss of
pay or other benefits as a result of being removed from office,
he disagrees with the IEB's decision not to award him any
damages.  Plaintiff's arguments are insufficient to overcome
summary judgment.

As discussed above, the IEB rejected Plaintiff's argument
that the recall was politically motivated, noting that "Politics
are almost always at the root of recall issues.  Article 45,
Section 3 gives the Membership a means of exercising its
political will." (IEB Decision p. 12)  The Board also rejected
Plaintiff's contention that the Local and its officers acted
maliciously in conducting the recall, concluding that the Local
"made mistakes in the handling of this recall.  The Local Union
mistakes were not understanding the process of handling recall
petitions and recall meetings." (IEB Decision p. 15.)  And the

-18-

IEB noted but rejected his assertion that the second recall petition within one year violated Article 45, Section 3.  The IEB noted that the one-year rule applies only if the "same" complaints are made in successive petitions.

Plaintiff clearly disagrees with these conclusions, but his arguments fail to establish a genuine dispute of fact that the IEB's interpretation of its constitutional provisions was "unreasonable" or "unfair" such that his breach of contract claim should proceed.  Plaintiff cites Exec. Bd., Local 234 v. Transp. Workers Union of Am., 338 F.3d 166, 170 (3rd Cir. 2003), which articulates the general rule:

> Although this court has never explicitly defined "patently unreasonable," the standard is undeniably a high one as courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable.

(internal quotations and citation omitted).  The Third Circuit suggested in that case that the court should defer to the union's interpretation of its own governing instrument, **unless** (1) the constitutional term is unambiguous and (2) the union's interpretation flatly contradicts that unambiguous language.  Id.

Plaintiff testified in his deposition that he voluntarily resigned from GM while pursuing his union appeal, because he believed that the union could "do something" to undo his irrevocable decision to retire once it favorably decided his

-19-

appeal.[3]    Plaintiff cites no constitutional or collective
bargaining provision to support his assumption that the UAW could
intercede with GM to secure a reversal of a member's irrevocable
early retirement decision.  Nor does Plaintiff cite any example
of the union actually doing so.  Defendants correctly point out
that the Union constitution did not permit Plaintiff to resume
the duties of bargaining chair after he retired.  While Plaintiff
does not contest that fact and does not expressly seek
reinstatement in this lawsuit, he clearly seeks damages in lieu
of reinstatement.

      The union's decision concerning an award of relief under its
constitution is as deserving of the court's deference as is its
decision on whether or not a term was breached.  Plaintiff argues
that IEB's decision not to award him damages is not "relevant."
The Court disagrees, as it is that very decision that Plaintiff
challenges in this lawsuit.  In order to permit him to proceed,
the interpretation and application of the union constitution
would be required to resolve his claim.  In the absence of some
evidence creating a genuine dispute that the IEB's decision was
"patently unreasonable" or "unfair" to the Plaintiff, the Court

---

[3] He testified: "I did not know that the UAW wouldn't
support me to the point of saying, well, you can, you didn't, you
know, you are the chairman.  You are, you still have this
position.  You really don't have to retire.  I didn't know that
they wouldn't support me in that area. ... And if they didn't,
then I was willing to leave." (Doc. 16, Long Deposition p. 61.)

concludes that Defendants are entitled to judgment on Plaintiff's breach of contract claims.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion for summary judgment (Doc. 17) is granted.  Plaintiff's claims are dismissed with prejudice.

THIS CASE IS CLOSED.

SO ORDERED.

Dated: March 25, 2008   <u>s/Sandra S. Beckwith</u>
            Sandra S. Beckwith, Chief Judge
            United States District Court